**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**NEWNAN DIVISION**

| | | |
|---|---|---|
| ISAAC H., | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3:21-cv-00001-RGV |
| | : | |
| COMMISSIONER, SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## FINAL ORDER

This is an action to review the determination by the Commissioner of Social

Security ("the Commissioner") that claimant Isaac H. ("claimant") is not entitled

to a period of disability and disability insurance benefits ("DIB") under Title II of

the Social Security Act, 42 U.S.C. §§ 401-433 ("the Act").  See [Docs. 1 & 4].[1]  For

---

[1] See also [Doc. 15] and its attachments for the electronic Certified Administrative Record ("eCAR"), hereinafter referred to as ("Tr. at __").  With the exception of the eCAR, which is cited according to the actual transcript page number shown on the bottom right corner of the record, the cited document and page numbers in this Final Order refer to the document and page numbers shown on the Adobe file reader linked to this Court's electronic filing database (CM/ECF).

the reasons that follow, the Commissioner's decision denying claimant's

application for DIB is **AFFIRMED**.[2]

## I. PROCEDURAL HISTORY

Claimant, who was born on June 21, 1961, graduated high school in a special

education program,[3] and has past relevant work as a tractor trailer truck driver,

protectively filed an application for DIB on May 16, 2018,[4] alleging an onset of

---

[2] The parties have consented to have a magistrate judge conduct any and all proceedings in this case, including the entry of final judgment. See [Docket entries dated 01/20/2022].

[3] Due to claimant's age, his "Special Education records, if any, are no longer available[.]" (Tr. at 342).

[4] "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." Walker v. Astrue, Civil Action File No. 1:12–CV–2586–TWT, 2013 WL 5354213, at *2 n.1 (N.D. Ga. Sept. 24, 2013) (citation and internal marks omitted), adopted at *1. "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." Id. (citation and internal marks omitted). Additionally, the Commissioner published final rules entitled, "Revisions to Rules Regarding the Evaluation of Medical Evidence; Correction," on January 18, 2017, which became effective as of March 27, 2017. See 82 FR 15132-01, 2017 WL 1105368 (Mar. 27, 2017). "Some of the new rules apply only to applications/claims filed before March 27, 2017, and others apply only to applications/claims filed on or after March 27, 2017." Christensen v. Saul, DOCKET NO. 1:19cv68-MOC, 2019 WL 6359764, at *2 n.1 (W.D.N.C. Nov. 27, 2019) (citation omitted) (citing 20 C.F.R. § 404.1527 ("explaining how an adjudicator considers medical opinions for claims filed before March 27, 2017") and 20 C.F.R. § 404.1520c ("explaining how an adjudicator considers medical opinions for claims filed on or after March 27, 2017")). Since claimant "filed [his] application[] after March 27, 2017, the Commissioner's revised [R]egulations apply to the evaluation of [his] claim[]." A.A.S. v. Comm'r of Soc. Sec., Case No: 3:20-CV-74-MSH, 2021 WL 4313603, at *3 (M.D. Ga. Sept. 22, 2021) (citations omitted).

disability of January 18, 2018, due to nerve damage in his neck and back, high blood pressure, and high cholesterol.  (Tr. at 17, 39, 43, 49-50, 58-59, 62, 64, 68, 70-71, 74, 79, 82, 87, 142, 151-52, 174, 177, 187-89, 195-98, 214, 230).  Claimant's application was denied initially and on reconsideration, (Tr. at 58-79, 82-92), and claimant then requested a hearing before an Administrative Law Judge ("ALJ"), (Tr. at 93-109).  On April 16, 2020, the ALJ, S. Charles Murray, held the administrative hearing by telephone "due to the extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic."  (Tr. at 17, 30-57).[5]

On May 22, 2020, the ALJ issued a decision, denying claimant's DIB application upon finding that claimant had not been under a "disability" as defined by the Act from January 18, 2018, through the date last insured.[6]  (Tr. at 14-29).  Specifically, the ALJ found that claimant had the severe impairments of

---

[5] Roger McNeeley testified as the vocational expert ("VE") at the administrative hearing.  See (Tr. at 48-54); see also (Tr. at 252-53 (VE's resume)).

[6] The ALJ determined that claimant met the insured status requirements of the Act through December 31, 2018.  (Tr. at 17, 19).  "To be eligible for [DIB], a claimant must demonstrate a disability on or before the last date on which []he was insured."  Castleman v. Comm'r, Soc. Sec. Admin., 824 F. App'x 927, 927-28 (11th Cir. 2020) (per curiam) (unpublished) (citations omitted).  Thus, claimant must establish disability on or before December 31, 2018, in order to be eligible for DIB.  See id.; see also (Tr. at 17).

spondylosis and arthritis, as well as the non-severe impairments of diabetes and hypertension, but that he did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (Tr. at 19-20 (citations omitted)).  The ALJ then found that claimant retained the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c), except with the following limitations:

> [C]laimant must avoid climbing ropes, ladders and scaffolds, unprotected heights; occasional crawling; frequent stoop, kneel, balance[,] crouch, ramps and stairs; simple tasks; avoid extreme heat and cold temperatures; low stress jobs only; with these restrictions, the claimant is able to maintain attention and concentration and complete a normal work day schedule.

(Tr. at 20 (emphasis omitted)).  The ALJ concluded that claimant was unable to perform his past relevant work as a tractor trailer truck driver, but that he was capable of performing other medium, unskilled jobs, such as counter supply worker, linen room attendant, and dining room attendant, that he found existed in significant numbers in the national economy based on the VE's testimony at the administrative hearing, and therefore, claimant was not disabled under the Act. (Tr. at 23-25 (citations omitted)); see also (Tr. at 50-51).

Claimant sought review by the Appeals Council, (Tr. at 148-50), and on November 3, 2020, the Appeals Council denied claimant's request for review,

making the ALJ's decision the final decision of the Commissioner, (Tr. at 1-6).[7]
Claimant appealed the decision to the district court seeking review of the
Commissioner's decision.  [Docs. 1 & 4].  Specifically, claimant's argument on
appeal is that substantial evidence does not support the ALJ's finding that he could
perform other jobs identified by the VE.  [Doc. 17]; see also [Doc. 19].[8]  The relevant
details of claimant's medical history and the evidence in the record will be set forth
as necessary during the discussion of the issues raised by claimant.  Thus, the
matter is now before the Court upon the administrative record and the parties'
briefs, [Docs. 15, 17, 18, & 19], and is ripe for review pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if he
is unable "to engage in any substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected to result in
death or which has lasted or can be expected to last for a continuous period of not

---

[7] In the denial, the Appeals Council acknowledged that claimant had submitted a
letter from his wife dated August 19, 2020, but it found that "this evidence [did]
not show a reasonable probability that it would change the outcome of the
decision" and therefore "did not exhibit this evidence."  (Tr. at 2); see also (Tr. at
7-8).

[8] Claimant "did not raise other arguments," and he "thus waived all challenges to
the ALJ's decision except the one[s] briefed."  Jones ex rel. Martensen v. Colvin,
No. CV414–130, 2015 WL 4770059, at *3 n.3 (S.D. Ga. Aug. 12, 2015) (citation
omitted), adopted by 2015 WL 5168508, at *1 (S.D. Ga. Sept. 2, 2015).

5

less than 12 months[.]"[9]  42 U.S.C. § 423(d)(1)(A); <u>see also</u> <u>McCullars v. Comm'r,</u>

<u>Soc. Sec. Admin.</u>, 825 F. App'x 685, 690 (11th Cir. 2020) (per curiam) (unpublished)

(citation omitted); <u>Jones v. Comm'r of Soc. Sec.</u>, 478 F. App'x 610, 611 (11th Cir.

2012) (per curiam) (unpublished) (citation omitted); <u>Majkut v. Comm'r of Soc. Sec.</u>,

394 F. App'x 660, 662 (11th Cir. 2010) (per curiam) (unpublished) (citations

omitted).    The impairment or impairments must result from anatomical,

psychological, or physiological abnormalities which are demonstrable by

medically accepted clinical or laboratory diagnostic techniques and must be of

such severity that the claimant is not only unable to do previous work but cannot,

considering age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy.   42 U.S.C. §

423(d)(2)-(3); <u>D'Andrea v. Comm'r of Soc. Sec. Admin.</u>, 389 F. App'x 944, 946 (11th

Cir. 2010) (per curiam) (unpublished) (citation omitted).

    "The burden of proof in a Social Security disability case is divided between

the claimant and the Commissioner." <u>Gibson v. Astrue</u>, Civil Action File No. 1:09-

---

[9] "The relevant law and regulations governing the determination of disability under a claim for DIB are nearly identical to those governing the determination under a claim for [supplemental security income ('SSI')]," and the "legal standards to be applied are the same regardless of whether a claimant seeks DIB, to establish a 'period of disability,' or to recover SSI." <u>Bailey v. Astrue</u>, 739 F. Supp. 2d 1365, 1367 n.2 (N.D. Ga. 2010) (citation omitted); <u>see also</u> <u>Duthie v. Astrue</u>, Civil Action No. 11–0291–N, 2012 WL 2505920, at *2 (S.D. Ala. June 28, 2012) (citation omitted). Thus, "to the extent the Court cites to SSI cases, statutes, or [R]egulations, they are equally applicable to [claimant's] DIB claims." <u>Bailey</u>, 739 F. Supp. 2d at 1367 n.2.

CV-677-AJB, 2010 WL 3655857, at *7 (N.D. Ga. Sept. 13, 2010). "The claimant bears the primary burden of establishing the existence of a 'disability' and therefore entitlement to disability benefits." Id. (citing 20 C.F.R. § 404.1512(a)); see also Symonds v. Astrue, 448 F. App'x 10, 11 (11th Cir. 2011) (per curiam) (unpublished) (citation omitted). The Commissioner utilizes a five-step sequential analysis to determine whether the claimant has met the burden of proving disability. Tisdale v. Soc. Sec. Admin., Comm'r., 806 F. App'x 704, 706 (11th Cir. 2020) (per curiam) (unpublished) (citations omitted); Manzo v. Comm'r of Soc. Sec., 408 F. App'x 265, 266 (11th Cir. 2011) (per curiam) (unpublished) (citations omitted); Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citations omitted); 20 C.F.R. § 404.1520(a)(4).

The claimant must prove at step one that he is not undertaking substantial gainful activity. See Manzo, 408 F. App'x at 266 (citations omitted); 20 C.F.R. § 404.1520(a)(4)(i). At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments which significantly limits his ability to perform basic work-related activities. See Manzo, 408 F. App'x at 266 (citations omitted); 20 C.F.R. § 404.1520(a)(4)(ii). At step three, if the impairment meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing of Impairments), the claimant will be considered disabled without consideration of age, education, and work experience. See Salazar v. Comm'r of Soc. Sec., 372 F.

App'x 64, 66 (11th Cir. 2010) (per curiam) (unpublished) (citation omitted); 20 C.F.R. § 404.1520(a)(4)(iii); see also 20 C.F.R. § 404.1525.   At step four, if the claimant is unable to prove the existence of a listed impairment, he must prove that the impairment prevents performance of past relevant work.   See D'Andrea, 389 F. App'x at 945 (citation omitted); 20 C.F.R. § 404.1520(a)(4)(iv).[10]   At step five, the Regulations direct the Commissioner to consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work.   See Manzo, 408 F. App'x at 267 (citations omitted); 20 C.F.R. § 404.1520(a)(4)(v).[11]   "The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity to perform."   Holmes v. Astrue, Civil Action File No. 1:09–CV–01523–AJB, 2010 WL 2196600, at *12 (N.D. Ga. May 27, 2010).   In order to

---

[10] "A claimant's RFC is assessed between steps three and four of the sequential analysis, and is a determination of his . . . remaining ability to engage in work despite impairments."   White v. Comm'r of Soc. Sec., CASE NO. 3:18-CV-61-MSH, 2018 WL 6683004, at *3 (M.D. Ga. Dec. 19, 2018).   "It is the most that a claimant can do despite being impaired."   Id. (citation omitted).

[11] As explained by Doughty, the temporary shifting of the burden at step five to the Commissioner is a creature of judicial gloss on the Act and not mandated by the statutes. 245 F.3d at 1278 n.2 (citations omitted); see also Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995) (per curiam) (citation omitted) ("Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the [Commissioner] to show other work the claimant can do.").   "Until step five is reached, the burden is on the claimant to introduce evidence in support of [his] application for benefits."   Salazar, 372 F. App'x at 66 (citation omitted).

be considered disabled, the claimant must prove an inability to perform the jobs that the Commissioner lists.  <u>Doughty</u>, 245 F.3d at 1278 n.2 (citation omitted).

If at any step in the sequence a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends.  <u>See</u> 20 C.F.R. § 404.1520(a)(4).  Despite the shifting of burdens at step five, the overall burden rests upon the claimant to prove that he is unable to engage in any substantial gainful activity that exists in the national economy.  <u>Doughty</u>, 245 F.3d at 1278 & n.2 (citations omitted).

### III.  SCOPE OF JUDICIAL REVIEW

The scope of judicial review of a denial of Social Security benefits by the Commissioner is limited.  <u>Lynch v. Astrue</u>, 358 F. App'x 83, 86 (11th Cir. 2009) (per curiam) (unpublished) (citation omitted); <u>see also</u> <u>Jasmatie R. v. Saul</u>, CIVIL ACTION FILE NO. 1:19-cv-03541-AJB, 2020 WL 5406172, at *3 (N.D. Ga. Sept. 9, 2020).  "Judicial review of the administrative decision addresses three questions: (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues."  <u>Russell v. Astrue</u>, 742 F. Supp. 2d 1355, 1367 (N.D. Ga. 2010) (citing <u>Fields v. Harris</u>, 498 F. Supp. 478, 488 (N.D. Ga. 1980)); <u>see also</u> <u>Sherna S. R. v. Saul</u>, CIVIL ACTION FILE No. 1:18-cv-05893-AJB, 2020 WL 1698821, at *3 (N.D. Ga. Apr. 7, 2020) (citations omitted).  "This Court may not

decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner." Russell, 742 F. Supp. 2d at 1367; see also Pinckney v. Comm'r of Soc. Sec., 853 F. App'x 347, 349 (11th Cir. 2021) (per curiam) (unpublished) (citation omitted); Loveless v. Comm'r, Soc. Sec. Admin., 678 F. App'x 866, 868 (11th Cir. 2017) (per curiam) (unpublished) (citation omitted); Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam) (citation omitted).  If supported by substantial evidence and proper legal standards were applied, the findings of the Commissioner are conclusive.  See Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997) (per curiam) (quoting 42 U.S.C. § 405(g)); Foote, 67 F.3d at 1560 (citation omitted).

"The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding," and "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (last alteration in original) (citations omitted).  "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Id.; see also Peterson v. Comm'r of Soc. Sec., No. 21-10086, 2021 WL 3163662, at *1 (11th Cir. July 27, 2021) (per curiam) (unpublished) (citation omitted).  "Substantial evidence is more than a scintilla and is such relevant

evidence as a reasonable person would accept as adequate to support a conclusion." Somogy v. Comm'r of Soc. Sec., 366 F. App'x 56, 62 (11th Cir. 2010) (per curiam) (unpublished) (citations and internal marks omitted); see also Alvarez v. Comm'r of Soc. Sec., 848 F. App'x 823, 824 (11th Cir. 2021) (per curiam) (unpublished) (citation omitted).  In considering the evidence in the record, this Court must consider the record as a whole.  Lynch, 358 F. App'x at 86 (citations omitted).  It may not affirm the Commissioner's decision by referring only to those parts of the record which support the same conclusion.  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam); see also John A. v. Comm'r, Soc. Sec. Admin., CIVIL ACTION FILE NO. 3:17-cv-00141-RGV, 2019 WL 994970, at *13 (N.D. Ga. Feb. 19, 2019) (citation omitted).  That is, "the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence."  Wooten v. Astrue, No. CV 309-023, 2010 WL 2521047, at *2 (S.D. Ga. May 26, 2010) (citation omitted), adopted by 2010 WL 2521045, at *1 (S.D. Ga. June 21, 2010).  "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight."  Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951).

However, if the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the evidence preponderates against the

Commissioner's decision.  <u>Dyer</u>, 395 F.3d at 1210 (citation omitted); <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam) (citation omitted); <u>Ellison v. Barnhart</u>, 355 F.3d 1272, 1275 (11th Cir. 2003) (per curiam) (citation omitted); <u>Miles v. Chater</u>, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (citation omitted).  "In contrast, review of the ALJ's application of legal principles is plenary."  <u>Bailey</u>, 739 F. Supp. 2d at 1376 (citing <u>Foote</u>, 67 F.3d at 1558; <u>Walker v. Bowen</u>, 826 F.2d 996, 999 (11th Cir. 1987) (per curiam)).  Furthermore, "an error is harmless if it does not affect the ALJ's ultimate decision."  <u>Loveless</u>, 678 F. App'x at 868 (citation omitted).

## IV.  ANALYSIS OF CASE

Claimant argues that the ALJ erred because he had been released to return to work "with a 25-pound weight lifting restriction," which "would put [him] at an exertional capacity between light, where the maximum lifting is 20 pounds, but below medium which requires the ability to lift and carry up to 50 pounds," and the ALJ "noted that [two] treating physicians . . . found [him] capable of performing work at the light-to-medium exertional level and found these opinions persuasive," yet "at the light exertional level, the Medical-Vocational rules would dictate a finding that he is disabled," but the ALJ's RFC "finding, and the hypothetical upon which he based his decision to deny [claimant's] benefits was for an exertional level of medium work, not for an exertional level of 'light-to-

medium' which was the RFC he found persuasive."  [Doc. 17 at 11-12 (emphasis, footnotes, and citations omitted)].  Claimant asserts that although the ALJ had "a VE at the hearing, he never gave him a hypothetical assuming a[n RFC] for the 'light-to-medium' exertional capacity which he found persuasive," nor "did he ask the VE whether a lifting limitation to 25 pounds would significantly reduce the occupational base for medium work," and that the ALJ's reliance upon the VE's testimony to determine that there were other jobs that claimant could perform  was therefore in error and not supported by substantial evidence.  [Id. at 13-14].

The Commissioner responds that while claimant "argues that a lifting limitation of 25 pounds or a restriction to light to medium work would significantly erode the occupational base for medium work, and thus, render [claimant] disabled," his "argument requires th[e] Court to accept his argument that the ALJ erred in formulating the RFC," but "substantial evidence supports the ALJ's RFC finding" and therefore, "the remainder of [claimant's] argument—that he should have been found disabled if limited to an exertional level between light and medium—fails."  [Doc. 18 at 16 (citations omitted)]; see also [id. at 5-15].  Thus, the Commissioner maintains that "[b]ecause the VE's testimony was in response to a hypothetical question that fairly set out all of [claimant's] credible limitations, as well as [his] vocational characteristics, the ALJ properly relied on the VE's

testimony to find that [he] could perform other work and was not disabled." [Id. at 15 (citations omitted)].

"When a claimant can no longer perform his past relevant work or has no past relevant work, the ALJ may use the testimony of a VE to determine whether the claimant has the ability to perform other jobs in the national economy." Barnes v. Berryhill, CIVIL ACTION FILE NO. 3:16-cv-00141-RGV, 2018 WL 10879110, at *23 (N.D. Ga. Mat. 13, 2018) (citation omitted), aff'd, 763 F. App'x 835 (11th Cir. 2019) (per curiam) (unpublished); see also Santiago-Borges v. Berryhill, Case No. 8:17-cv-781-T-DNF, 2018 WL 4520364, at *2 (M.D. Fla. Sept. 21, 2018) (citation omitted) ("At step five [of the sequential analysis], the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform."). "'In order for a [VE]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical which comprises all of the claimant's impairments.'" Mullis v. Astrue, Civil Action File No. 1:07-CV-1986-AJB, 2008 WL 4452343, at *16 (N.D. Ga. Sept. 30, 2008) (citation omitted); see also Hurst v. Comm'r of Soc. Sec., 522 F. App'x 522, 524-25 (11th Cir. 2013) (per curiam) (unpublished) (citation omitted).  However, a "hypothetical need only include limitation[s] supported by the record," and need not include findings that the ALJ has properly rejected.  See Dunaway v. Astrue, No. 8:06-CV-1567-T-EAJ, 2008 WL 1897603, at *5-6 (M.D. Fla. Apr. 28, 2008) (citation omitted).  Therefore, "an ALJ is

not required to include in his hypothetical questions to the [VE], limitations that he does not accept as true." Turner v. Astrue, No. 4:07-CV-69(CDL), 2008 WL 4003343, at *6 (M.D. Ga. Aug. 25, 2008) (citations omitted), adopted at *1.  Nor does the ALJ's hypothetical need to include impairments that do not severely limit the claimant's ability to work.  See Loveless v. Massanari, 136 F. Supp. 2d 1245, 1250-51 (M.D. Ala. 2001) (ALJ's hypothetical questions were proper because "they included only the impairments that the ALJ found to have been severe").  In fact, "'[n]o symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment that could reasonably be expected to produce the symptoms.'" Turner, 2008 WL 4003343, at *6 (footnote and citations omitted).  Moreover, "the burden is upon [c]laimant to introduce into the record such medical documentation." Id. (citation omitted).  "Where the VE's testimony is based on a hypothetical question including limitations from the RFC finding and the RFC is supported by the record evidence, the VE's testimony supports the ALJ's decision." Lewis v. Saul, CV 118-096, 2019 WL 2953289, at *11 (S.D. Ga. July 9, 2019) (citation omitted).

"A claimant's RFC is [his] ability to do physical and mental work activities on a sustained basis despite [his] limitations from [his] impairments." Wilver v.

<u>Astrue</u>, No. 8:07-CV-488-T-EAJ, 2008 WL 2824815, at *4 (M.D. Fla. July 21, 2008) (citation omitted); <u>see also</u> <u>Land v. Comm'r of Soc. Sec.</u>, 494 F. App'x 47, 49 (11th Cir. 2012) (per curiam) (unpublished) (citations omitted).  "An ALJ is entitled to formulate an RFC and resolve any ambiguity or inconsistency in the medical evidence, based on the entire record," and "it is the ALJ's responsibility (and not any doctor's) to assess the RFC based on the record as a whole."  <u>Martin v. Saul</u>, CV419-340, 2021 WL 1115293, at *2 (S.D. Ga. Feb. 4, 2021) (citations omitted), adopted by 2021 WL 1110294, at *1 (S.D. Ga. Mar. 23, 2021).  "And the ALJ can distill a claimant's RFC from an amalgamation of the record as a whole, without requiring a specific medical opinion to articulate a specific functional limitation." <u>Id.</u> (citation omitted).

In his May 22, 2020, decision denying claimant's DIB application, (Tr. at 14-29), the ALJ found that claimant had the severe impairments of spondylosis and arthritis and the non-severe impairments of diabetes and hypertension, (Tr. at 19-20 (citations omitted)), and concluded that claimant retained the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c), except with the following limitations:

> [C]laimant must avoid climbing ropes, ladders and scaffolds, unprotected heights; occasional crawling; frequent stoop, kneel, balance[,] crouch, ramps and stairs; simple tasks; avoid extreme heat and cold temperatures; low stress jobs only; with these restrictions, the claimant is able to maintain attention and concentration and complete a normal work day schedule.

(Tr. at 20 (emphasis omitted)).   In making the RFC determination, the ALJ discussed claimant's medical records, his testimony from the administrative hearing, his adult function report, and the medical opinions offered by orthopaedic specialists David C. Rehak, M.D. ("Dr. Rehak"), and Thomas Bernard, Jr., M.D. ("Dr. Bernard"), as well as the state agency medical consultants, among others.  (Tr. at 21-23).

Claimant asserts that the "decision should be reversed and remanded to determine whether the occupational base for medium work is significant[ly] eroded and/or whether there are a significant number of jobs [he] could perform at the 'light-to-medium' exertional range in light of his age, education and past work."  [Doc. 17 at 14].  As the Commissioner points out, claimant's "argument requires this Court to accept his argument that the ALJ erred in formulating the RFC," [Doc. 18 at 16], and thus, the threshold issue to be addressed is whether substantial evidence supports the ALJ's RFC assessment in this case, and for the reasons that follow, the Court finds that it does.

The medical evidence of record demonstrates that on January 18, 2018, the alleged date of claimant's onset of disability, he suffered an on-the-job injury when he slipped and fell on a patch of ice while exiting his tractor trailer truck and injured his right wrist, neck, and lower back.  (Tr. at 291-94, 296-306, 319-26).  X-rays of claimant's spine showed "[m]ild multilevel degenerative cervical

spondylosis with no acute traumatic abnormality" and "[m]ild to moderate lumbar degenerative change," while x-rays of his right wrist were unremarkable. (Tr. at 324-26).  Claimant was diagnosed with low back pain, lumbar muscle pain, cervical muscle strain, and right wrist sprain, and he was prescribed Tylenol with codeine, 800 mg of ibuprofen, and methocarbamol.  (Tr. at 294).

On January 22, 2018, claimant sought treatment for his right wrist pain from Dr. Rehak at the Hughston Clinic.  (Tr. at 364-67).  Claimant complained of pain and edema in his wrist to his hand, but reported no back pain.  (Tr. at 365).  He explained that he had weakness in his hand, was unable to grip anything, had numbness in his fingertips, and had trouble sleeping due to pain and discomfort. (Tr. at 365-66).  Physical examination of claimant's right wrist showed no erythema, induration, warmth, or mass; minimal swelling; excellent finger range of motion; no tenderness; normal range of motion; 5/5 strength; and various negative tests.  (Tr. at 366).  Dr. Rehak assessed claimant with contusion of the wrist and instructed him to wear a wrist brace and found that he could "return to work with limited use of the right hand," a mandatory wrist splint, and a 10 pound lifting restriction.  (Tr. at 366-67).

On February 6, 2018, claimant returned to the Hughston Clinic and saw Dr. Bernard, complaining of neck and low back pain, which he described as a sharp pain that occurred on a daily basis and was aggravated with standing and

18

walking.  (Tr. at 360-63).  He also reported having difficulty "going from sitting to standing" and that he was "unable to turn over without help."  (Tr. at 361 (emphasis omitted)).  Examination revealed "some diffuse tenderness [about the] cervical and lumbar paraspinal region," a normal gait and station, and limited range of motion about the lumbar spine but a full range of motion about his hips, and he was diagnosed with lumbosacral spondylosis without myelopathy and referred for physical therapy.  (Tr. at 362).  Dr. Bernard also continued claimant on light duty status with a 25 pound weight lifting limitation.  (Id.).[12]

On March 13, 2018, claimant followed up with Dr. Bernard, (Tr. at 357-59), and reported that physical therapy had not helped him but made him worse, and

_____

[12] From February 22 through April 13, 2018, claimant attended five physical therapy sessions for his low back pain at Benchmark Rehab Partners.  (Tr. at 259-83).  During his first evaluation on February 22, 2018, it was noted that claimant refused to perform the floor to waist lift due to pain; that he did not display the ability to lift or climb, though he did "show the ability to push occasionally at a medium level and walk occasionally"; that he was "self limiting" during the evaluation due to reports of pain, since he was "observed to fully lumbar flex to remove shoes, but did not display this during testing"; and that his "rehab potential [was] good."  (Tr. at 280-82).  During his session on February 28, 2018, claimant reported his pain was four out of ten with his back bothering him the most, (Tr. at 275), and on March 7, 2018, it was again noted that claimant was self-limiting due to pain and that he had not made progress with his lumbar range of motion, decreased pain, or improved functional ability, but that his frequent walking had improved, (Tr. at 266, 269).  During his last visit on April 13, 2018, (Tr. at 259-61), it was noted that after five treatment sessions, claimant was still having pain but felt a little better since his last visit, though prolonged sitting increased his pain, and that Dr. Bernard had advised to discontinue treatment at this time, (Tr. at 259-61).

that his low back pain bothered him more than his neck, (Tr. at 358).  It was noted that claimant had "been on light duty status [with a] 25 [pound] weight limit but his employer [did] not have light duty available," and MRIs of claimant's cervical and lumbar spine were ordered and performed on March 27, 2018.  (Tr. at 358-59, 377-80).[13]  Claimant followed up with Dr. Bernard on April 3, 2018, (Tr. at 354-56), and after reviewing the MRI results, Dr. Bernard noted that he did not believe surgical intervention was indicated and that since claimant's employer could not accommodate light duty work, he would schedule a functional capacity evaluation, (Tr. at 355).  On April 16, 2018, claimant saw Dr. Rehak for continued discomfort in his wrist and hand.  (Tr. at 351-53).  Following an essentially normal physical examination of claimant's hands and digits, with the exception of a positive carpal compression test, (Tr. at 352-53), he was assessed with contusion of the right wrist and referred for electromyogram/nerve conduction studies ("EMG/NCS"), (Tr. at 353).  Dr. Rehak also noted that claimant seemed to be "doing well" with his right wrist sprain and contusion, that claimant's subjective

---

[13] An MRI of claimant's cervical spine showed severe bilateral "[n]eural foraminal narrowing" at the C5-C6 level, but mild to moderate on the right side at the C6-C7 level and mild on the left side at the C6-C7 level and "[l]ateral recess narrowing" that was moderate on the left side and mild on the right side at the C5-C6 level, while an MRI of claimant's lumbar spine showed moderate bilateral "[n]eural foraminal narrowing" at the L4-L5 level, but moderate on the left side and severe on right side at the L5-S1 level; mild to moderate "narrowing of [the] left neural foramen and L3-L4"; and "mild left lateral recess narrowing [at] L3-L4 due to [a] small left subarticular component disc protrusion."  (Tr. at 377-80).

complaints did not correspond to "anything [he could] find on his exam" and appeared to "be self-limiting," and that he could return to work with a 10 pound lifting restriction.  (Id.).

On May 1, 2018, claimant saw Dr. Bernard, (Tr. at 348-50), and it was noted that he had undergone a functional capacity evaluation on April 18, 2018, "that [was] basically an invalid test due to inconsistencies in the [claimant's] performance" and that "[i]n extrapolating the data[,] it would seem that he [was] capable of [a] light to medium job profile range," (Tr. at 349).[14]  Dr. Bernard also noted that while the "status of [claimant's] right wrist injury [was] unknown and [it was] also unknown how this would affect his ability to drive an 18 wheeler type truck," that "[a]ssuming there [was] no further treatment involving his right wrist, he might be able to drive small trucks locally."  (Id.).  On exam, Dr. Bernard observed that claimant had full range of motion about his cervical spine and shoulders, and he concluded that claimant was "maximally medically improved from treatments to his cervical and lumbar spine" and that his "work status [was] somewhere between the light to medium job profile range," with the "outcome of treatments to his right wrist [ ] hav[ing] bearing up[]on his final work restrictions." (Tr. at 349-50).  He further concluded that claimant had "subjective symptoms only

---

[14] The eCAR does not include any functional capacity evaluation for claimant.  See generally [Doc. 15].

and there [was] no objective information to assign any permanent impairment to the cervical or lumbar spine." (Tr. at 350).

On June 2, 2018, claimant presented at West Georgia Medical Center, (Tr. at 288-91, 295, 327-35), with complaints of right shoulder and elbow pain without numbness, tingling, swelling, or loss of motion, (Tr. at 288-89). Physical examination revealed normal range of motion about the neck, normal muscle tone, and no edema, tenderness or deformity, (Tr. at 289), and x-rays of his right elbow showed "[n]o acute traumatic right elbow pathology," (Tr. at 334-35). He was diagnosed with right elbow pain and prescribed 800 mg of ibuprofen. (Tr. at 291).

On July 16, 2018, claimant followed up with Dr. Rehak following his EMG/NCS performed on May 21, 2018, (Tr. at 344-47), and Dr. Rehak noted that the results of the EMG/NCS showed mild right cubital tunnel, but that claimant's "symptoms and exam [did] not support this," explaining that claimant had "subjective complaints of numbness that [were] not limited to the ulnar distribution," that he had "a negative Tinel's and negative compression flexion test at the elbow," and that he did not believe that the EMG/NCS "finding [was] due to his work-related injury," (Tr. at 346-47). He also again noted, with respect to claimant's chronic right wrist sprain, that claimant had "subjective findings that [were] not supported by any[]thing on his physical exam or x-rays" and that he did not "believe any additional treatment [was] indicated." (Tr. at 346). Dr. Rehak

concluded that claimant had reached maximum medical improvement and he "agree[d] with Dr. Bernard in that he [was] certainly capable of working under a light to medium job description and/or his functional capacity evaluation." (Tr. at 347). He therefore assigned claimant's impairment of the right wrist and/or upper extremity a zero, as was his total person impairment. (Id.).[15]

At the administrative hearing held on April 16, 2020, (Tr. at 30-57), claimant testified that he had not worked since he slipped and fell and hurt his back on January 18, 2018, that he did not believe he could work because he could no longer do what he used to which was "drive a big truck," and that he had also had a

---

[15] On September 1, 2018, Abraham Oyewo, M.D., a non-examining state agency medical consultant, reviewed claimant's file and found claimant's physical impairments were non-severe. (Tr. at 62-65). On December 17, 2018, just prior to claimant's date last insured of December 31, 2018, (Tr. at 19), he presented at West Carroll Family Healthcare ("WCFH") to establish care for his diabetes and hypertension, among other issues, after being lost to follow ups due to insurance changes and a recent divorce, (Tr. at 461-65). On January 19, 2019, Robert Mitgang, M.D., another non-examining state agency medical consultant, reviewed claimant's file and also concluded that claimant had no severe physical impairment. (Tr. at 75). Claimant returned to WCFH on June 19, 2019, for abdominal fullness and bloating, (Tr. at 467-70); on September 18, 2019, for left-sided arm, wrist, hand and foot pain, (Tr. at 443-58); and on December 9, 2019, for his diabetes, hypertension, and mixed hyperlipidemia, (Tr. at 424-42). In December 2019, claimant was also evaluated as a new patient at Alliance Spine and Pain Center ("Alliance") for his neck and back pain, and it was noted at that time that claimant had not yet maximized conservative therapy. (Tr. at 405-10). He returned to Alliance on January 24, 2020, and February 14, 2020, and was administered right lumbar medial branch block injections at L3/4, L4/5, and L5/S1, (Tr. at 389-404), and on March 12, 2020, for a right lumbar radiofrequency ablation at the L3/4, L4/5, and L5/S1 levels, (Tr. at 414-22).

stroke on his left side less than a month prior to the hearing, (Tr. at 40-41).[16] Claimant estimated that he could sit for 20 to 30 minutes at one time before he would need to get up, that he could stand for no more than 30 minutes before he would need to sit down, that he could walk for no more than 15 minutes, and that while his "back doctor" had advised him not to lift anything over 40 pounds, he had not been able to lift anything like he used to, which was 450 to 500 pounds. (Tr. at 44-45, 196-98).

The ALJ's decision reveals that he applied the appropriate standard and that his RFC finding that claimant could perform medium work with certain postural, environmental, and mental limitations, is supported by substantial evidence as shown by his discussion of claimant's medical history, vocational evidence, medicinal and treatment regimen, diagnoses, and the medical opinions. See (Tr. at 20-23). Claimant contends that the ALJ erred by not including a lifting maximum of 25 pounds and an exertional capacity at the light-to-medium exertional level in his RFC assessment and hypothetical question to the VE upon which he ultimately relied at step five in finding claimant could perform other jobs. [Doc. 17 at 13-14]. However, as the Commissioner points out, [Doc. 18 at 6-

_____

[16] Claimant concedes that the stroke, which apparently "occurred a few weeks before the hearing" and of which "[t]here is no record . . . in the file," would "have occurred after his date last insured and would not be relevant to the period at issue." [Doc. 17 at 5 n.3].

15], "substantial evidence supports the ALJ's decision that [claimant] could perform a range of medium work," [id. at 15 (citation omitted)].

The ALJ specifically discussed claimant's testimony from the administrative hearing and his adult function report, including that he had "difficulty sitting and standing and an inability to get up after sitting or lying down" and that "he was advised by his doctor to lift no more than 40 pounds," that "nerves in his neck and back limit[ed] his ability to sit for long periods and cause numbness in the arms and hands," that he had "daily hip pain that also [did] not allow him to sit for long periods," that his "back pain limit[ed] his ability to lie down comfortably for long periods[] and [was] present when performing his personal care," that "[p]ain interfere[d] with [ his] ability to concentrate and pay attention," and that he wore "a prescribed brace all day until bedtime[] and ha[d] limitation with squatting, bending, reaching, kneeling, completing tasks and using his hands." (Tr. at 21 (citation omitted)). The ALJ also discussed that a physical examination from January 18, 2018, the date of his slip and fall causing his injuries, showed "tenderness to palpation and obvious swelling on the right upper back and right trapezius, and pain with right leg lifting," but that his "cervical, lumbar and right elbow x-rays were negative for fractures" and he was "diagnosed with[] back pain laterally, with right sciatica pain, with acute onset, lumbar muscle pain, cervical muscle pain, and sprain of the wrist" and prescribed medications, (id. (citation

omitted)); that on January 22, 2018, Dr. Rehak, an orthopedic hand surgeon, performed a worker's compensation examination of claimant's right wrist due to numbness and tingling since his fall and an "examination revealed minimal swelling and no acute findings," with a diagnosis of sprain or contusion and a prescription for a wrist splint and Tubgrip sleeve, and he noted that claimant could return to work with limited use of his right hand, a 10 pound lifting restriction, and mandatory use of the splint, (Tr. at 22 (citation omitted)); that on February 6, 2018, Dr. Bernard, an orthopedic surgeon, performed a worker's compensation exam of claimant's cervical and lumbar spine, which "revealed tenderness and pain with motion of the neck, with full range of motion," as well as a musculoskeletal exam, which "revealed tenderness and limited range of motion of the lumbar spine," and Dr. Bernard diagnosed claimant with lumbosacral spondylosis without myelopathy and cervical spondylosis without myelopathy and "released [ him] to return to work with a 25-pound weight lifting restriction," (id. (citation omitted)); that on March 13, 2018, Dr. Bernard noted that claimant had participated in five or six physical therapy sessions but stopped because they had not helped and that claimant reported that his back bothered him more than his neck and that he had been on light duty status with a 25 pound weight limit, but that his employer did not have any light duty available, (id. (citations omitted)); that during an April 3, 2018, follow up with Dr. Bernard, he "noted the

26

cervical spine MRI showed degenerative spondylosis worse at C5-C6 and C6-C7, and the lumbar MRI showed degenerative changes, L4-L5 and L5-S1 with mild lateral stenosis" and that proceeding with a functional capacity evaluation was the next step, (id. (citation omitted)); that during his July 2018 follow up with Dr. Rehak, his EMG/NCS showed right cubital tunnel, that a "physical examination revealed a positive compression test, but equal cross and snap bilaterally, good key pinch, good abduction, and negative Tinel's at carpal tunnel," and that Dr. Rehak "stated that the claimant's subjective findings [were] not supported by anything on his physical examination or x-rays, and he [did] not believe any additional treatment [was] indicated," as well as that "claimant's symptoms and examination [did] not support the diagnosis" of right cubital tunnel syndrome, and that claimant had "reached maximum medical improvement . . . and that he agree[d] with Dr. Bernard[] as far as the claimant being capable of working under a light to medium job description," (id. (citation omitted)); and that in December 2018, a family physician noted that claimant was "lost to follow-up due to insurance changes and recent divorce" and that the "examination revealed a brace on the claimant's right hand, and an otherwise normal examination of the neck, and upper and lower extremities, with no examination of the spine," (Tr. at 23).

As for the medical opinions, the ALJ considered the opinions offered by the state agency medical consultants that claimant's spine disorders were non-severe,

but found these opinions to be "not persuasive, as the evidence support[ed] finding the claimant's spine impairments [were] severe, but not disabling." (Id. (citations omitted)).  He also considered the opinions offered by Drs. Rehak and Bernard that "claimant ha[d] reached medical maximum improvement" and was released "to work with light to medium exertional level[ ]and [was] capable of performing work at the light-to-medium exertional level" and found them to be "persuasive, as they show the claimant's capacity for work at these exertional levels and supports finding he is not disabled." (Id.).[17]

---

[17] Under the new Regulations, the ALJ "must now determine the persuasiveness of medical opinions by considering supportability, consistency, nature and length of the treatment relationship, specialization, and other miscellaneous factors." Spikes v. Kijakazi, CV 320-036, 2021 WL 4318314, at *5 (S.D. Ga. Sept. 1, 2021) (citing 20 C.F.R. §§ 404.1520c(c), 416.920c(c)(1)-(c)(5)), adopted by 2021 WL 4317993, at *1 (S.D. Ga. Sept. 22, 2021).  However, because "supportability and consistency are the most important factors, the ALJ must articulate how these factors were considered for a medical source's opinions, but an ALJ is not required to articulate consideration of the remaining factors." Id. (citations omitted); see also Matos v. Comm'r of Soc. Sec., No. 21-11764, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022) (per curiam) (citation omitted); Rambo v. Comm'r of Soc. Sec., Case No: 6:20-cv-1527-DCI, 2021 WL 5843106, at *2 (M.D. Fla. Dec. 9, 2021) (citation omitted); Diaz-Ortiz v. Comm'r of Soc. Sec., Case No.: 2:20-cv-134-MRM, 2021 WL 4205850, at *4, 9 (M.D. Fla. Sept. 16, 2021) (citation omitted); B.M. v. Comm'r of Soc. Sec., Case No: 3:20-CV-94-MSH, 2021 WL 3931939, at *3 (M.D. Ga. Sept. 2, 2021).  In assessing these two factors, the ALJ's "analysis focuses on whether the medical source's opinion is supported by the objective medical evidence and supporting explanations and consistent with the other medical and nonmedical sources in the record." Spikes, 2021 WL 4318314, at *5 (citations omitted).  Finally, "[c]ourts recognize the new [R]egulations erect a framework that is highly deferential to the Commissioner." Id. (citations omitted); see also Anthony v. Kijakazi, CV 120-110, 2021 WL 4304725, at *4 (S.D. Ga. Sept. 3, 2021) (citations omitted), adopted by 2021 WL 4304721, at *1 (S.D. Ga. Sept. 21, 2021).

Claimant contends that because the ALJ "noted that treating physicians [Drs.] Rehak and Bernard found [him] capable of performing work at the light-to-medium exertional level and found these opinions persuasive," he should have included in his RFC assessment and hypothetical question to the VE a "25-pound weight lifting restriction," which "would put [him] at an exertional capacity between light, where the maximum lifting is 20 pounds, but below medium which requires the ability to lift and carry up to 50 pounds" and "exertional level of 'light-to-medium' which was the RFC he found persuasive." [Doc. 17 at 11-12 (emphasis and citations omitted)].[18]   However, as the Commissioner points out, see [Doc. 18

_____

[18] The Regulations define light work as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," while it defines medium work as work involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(b)-(c).  Additionally, "[a] full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds" and "[a]s in light work, sitting may occur intermittently during the remaining time," but " there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position" and "[i]n most medium jobs, being on one's feet for most of the workday is critical" and "[b]eing able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time."  Social Security Regulation ("SSR") 83-10, 1983 WL 31251, at *5-6 (S.S.A. Jan. 1, 1983); see also Gracia Joyce v. Kijakazi, CV620-074, 2022 WL 950887, at *2 n.3 (S.D. Ga. Mar. 1, 2022) (citations omitted) ("SSRs are entitled to deference, but are not binding on the courts."),

at 7], during claimant's last appointment with Dr. Rehak in July 2018, Dr. Rehak concluded that claimant was capable of working "under a light to medium job description" as his subjective complaints related to his chronic right wrist sprain were not supported by his physical exam or x-rays and he assigned him a zero impairment rating as to his right wrist and/or upper extremity, as well as to his total person, (Tr. at 346-47), and he did not find, as claimant contends, that claimant was limited to an exertional level that fell between light and medium. Likewise, during claimant's last appointment with Dr. Bernard in May 2018, Dr. Bernard found that claimant was capable of a light to medium job profile range, but he then explained that his work status fell "somewhere between the light to medium job profile range," with the "outcome of treatments to his right wrist [] hav[ing] bearing up[]on his final work restrictions" and that there was no objective basis upon which to assign any permanent impairment rating to claimant's cervical or lumbar spine and he did not include any lifting restriction at this time. (Tr. at 349-50). Given that Dr. Rehak thereafter opined that there was no additional treatment indicated for claimant's right wrist as the subjective complaints were not supported by physical exam or x-rays and assigned claimant a zero impairment rating, (Tr. at 346-47), and claimant also testified at the April 2020

---

adopted sub nom. Joyce v. Kijakazi, CV 620-074, 2022 WL 949910, at *1 (S.D. Ga. Mar. 29, 2022).

administrative hearing that he was advised not to lift anything over 40 pounds,

(Tr. at 44-45), substantial evidence supports the ALJ's RFC finding.   Indeed,

"[w]here an individual can perform both some [medium] work and some light

work, an ALJ may appropriately find that the claimant is capable of work at the

higher exertional level" and the ALJ "may establish an RFC finding the claimant

capable of reduced [medium] work with additional limitations rather than finding

the claimant capable solely of [light] work."   Powell v. Berryhill, Case No. 5:17-cv-

01219-TMP, 2018 WL 4539489, at *5 (N.D. Ala. Sept. 21, 2018) (alteration, footnote,

citation, and internal marks omitted).   And, "[i]t is the ALJ's responsibility (and

not any doctor's) to assess the RFC based on the record as a whole."   Buckner v.

Saul, CV419-302, 2020 WL 9348169, at *3 (S.D. Ga. Dec. 18, 2020) (citations omitted),

adopted by 2021 WL 1100452, at *1 (S.D. Ga. Mar. 23, 2021).[19]   "The ALJ needed

---

[19] Even if the ALJ's RFC assessment finding claimant could perform work at the medium exertional level is inconsistent with Drs. Rehak and Bernard's findings that claimant could perform work in the light to medium job profile range, the ALJ "must only explain whether a source statement is persuasive considering its supportability in, and consistency with, the medical evidence as a whole," and "merely because an [ALJ] finds a source persuasive," does not mean that the ALJ "must accept it wholly and incorporate into his RFC assessment any and all limitations that source suggests."   K.T.B. v. Comm'r of Soc. Sec., Case No: 3:20-CV-110-MSH, 2021 WL 5906372, at *2 (M.D. Ga. Dec. 14, 2021) (citations omitted). "Indeed, the ALJ need not adopt every limitation assessed by a credited medical source, nor must his RFC assessment mirror the opinion of every doctor." Buckner, 2020 WL 9348169, at *3 (citations omitted).   "To find otherwise, the Court would have to invade the province of the Commissioner and reweigh the evidence which is prohibited on judicial review."   K.T.B., 2021 WL 5906372, at *2 (citation omitted).   Here, the ALJ "cited more than a mere scintilla of evidence in support

only to include limitations in his RFC determination that were supported by the medical evidence and that the ALJ found to be credible," and he "was not required to accept at face value [claimant's] testimony," but rather, "[h]is function was to make determinations based upon the entire record." <u>McReynolds v. Berryhill</u>, 341 F. Supp. 3d 869, 883 (N.D. Ill. 2018).  The ALJ "found that [claimant] has the ability to perform the lifting requirements of medium exertional work based on Dr[s]. [Rehak and Bernard's] [] examination[s]," <u>id.</u> (citation omitted); <u>see also</u> (Tr. at 23), as well as the record as a whole, and "[b]ecause the [] record[] . . . do[es] not indicate that [claimant] needed greater lifting restrictions, substantial evidence supports the ALJ's lifting restriction [and associated RFC assessment at the medium exertional level]," <u>McReynolds</u>, 341 F. Supp. 3d at 883.

The ALJ properly considered all of the medical evidence in the record along with the other relevant evidence and properly formulated an RFC assessment that included all of the credible limitations supported by the record, and he also specifically included each of these limitations in his hypothetical to the VE.  <u>See</u> (Tr. at 20-25, 49-54).  Since the ALJ's RFC properly incorporated the evidence of record and accounted for all of claimant's impairments–and the hypothetical posed by the ALJ included all of the limitations of the RFC–it follows that the

---

of a finding of nondisability at all material times[.]" <u>Sallee v. Kijakazi</u>, Civ. No. 20-757 JAP/SCY, 2021 WL 4472867, at *12 (D. N.M. Sept. 30, 2021), adopted by 2021 WL 5106005, at *3 (D. N.M. Nov. 3, 2021).

hypothetical likewise comprised all of claimant's impairments, and thus, the ALJ did not err in relying on the VE's responsive testimony that claimant could perform work existing in significant numbers in the national and regional economy.  In other words, "[b]ecause the ALJ posed hypotheticals consistent with the RFC, which was supported by substantial evidence, the ALJ did not err in posing the hypotheticals."  Bouie v. Astrue, 226 F. App'x 892, 895 (11th Cir. 2007) (per curiam) (unpublished); see also Johnson v. Astrue, No. 8:11–cv–1555–T–23AEP, 2012 WL 3893570, at *7 (M.D. Fla. Aug. 10, 2012) ("Given the ALJ's proper assessment of [claimant's] RFC, the ALJ [] posed an accurate hypothetical to the VE that incorporated [claimant's] limitations."), adopted by 2012 WL 3893543, at *1 (M.D. Fla. Sept. 7, 2012).  Thus, based on the "record as a whole, the [C]ourt finds that substantial record evidence supports the limitations in the ALJ's RFC assessment," and claimant "has not shown that the ALJ's decision should be reversed."  Beck-Easley v. Colvin, Civil Action File No. 1:13–CV–02869–JFK, 2015 WL 1401646, at *8-9 (N.D. Ga. Mar. 26, 2015).

## V. CONCLUSION

For the reasons stated, the Commissioner's decision denying claimant's application for DIB is **AFFIRMED**.

**IT IS SO ORDERED**, this 15th day of September, 2022.

RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE